John P. Dougherty v. Commissioner.
Dougherty v. Commissioner
Docket No. 30808.
United States Tax Court
1953 Tax Ct. Memo LEXIS 288; 12 T.C.M. (CCH) 425; T.C.M. (RIA) 53132; April 20, 1953
*288 Held, the duplex dwelling units here involved were held by the taxpayer during the taxable year primarily for sale to customers in the ordinary course of his trade or business. A. B. Arbaugh, Esq., 1200 Harter Bank Building, Canton, Ohio, for the petitioner. Charles Speed Gray, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the year 1946 in the amount of $3,179.87. The only question presented is whether the gain derived by the petitioner from the sale of six duplex dwelling units is to be taxed as capital gain or ordinary income. Findings of Fact The facts stipulated are found accordingly. John P. Dougherty, the petitioner, is a resident of Canton, Ohio, and filed his income tax return for the year in question with the collector of internal revenue for the eighteenth district of Ohio. The petitioner is a building contractor and realtor who has been engaged in constructing houses intermittently since 1917. During 1941 and 1942, the petitioner acquired 55 lots in the Canton, Ohio, area on which he built houses for purposes of sale. These properties were never rented *289 before they were sold. In 1943, he obtained a real estate license and in the following year he became a member of the Canton Real Estate Board. During 1943 and early 1944 there were no governmental priorities necessary for construction work issued in the Canton area. An allotment for the construction of houses was later made available. On June 9, 1944, the petitioner purchased a tract of land in Canton for $13,650 at a sheriff's sale. The property purchased had two houses thereon. The petitioner remodeled one dwelling and used it as his personal residence. He had the other house torn down. In July, 1944, the petitioner applied to the National Housing Agency for a priority to build nine two-family dwelling units, proposing a rental of $50 per month for each single family unit. A maximum sales price of $6,000 for each single unit was also proposed in the application. In the same month, the taxpayer subdivided the tract he had purchased at the sheriff's sale into ten city lots. In August 1944, the National Housing Agency approved the petitioner's application to the extent of seven two-family dwelling units. The petitioner later obtained priorities for the other units. Regulations of *290 the National Housing Agency, in effect when the petitioner acquired his priority, required war housing to be held for rental only to eligible war workers during the duration of the national emergency and restricted the right to sell such dwellings. A maximum monthly rental of $50 per month and sales price of $6,000 were fixed by the regulations for such housing. The petitioner knew that the construction cost of the dwelling units would exceed $12,000 per double unit. The petitioner was granted construction loans in the maximum amount of $10,000 for each two-family unit by the First Federal Savings and Loan Association of Canton. The loans were secured by individual mortgages upon the individual lots. The Loan Association was prohibited from making loans of $10,000 on property that was limited to a sales price of $12,000. The monthly mortgage payments were $75 per duplex. The petitioner also knew that a monthly rental of $100 per duplex was insufficient to provide a satisfactory return on his investment. The petitioner constructed seven two-family units which were completed by March 1945, and he offered them for rent under the regulations of the National Housing Agency. Applications *291 from prospective tenants had been received prior to construction. Tenants were obtained between January 15, 1945, and April 17, 1945, at the rental of $50 per month, each unit being individually registered with the Office of Price Administration at the maximum rental of $50 per month. The petitioner refused offers to purchase the properties during and after construction. The demand for housing was very considerable during these years. The units were rented only to persons engaged in war work, some of the tenants being referred to the petitioner by the War Housing Center in Canton. The units were rented orally on a month to month basis. The petitioner filed a compliance report with the National Housing Agency on each individual unit as it was rented and received an acknowledgment from that Agency. These units were the only properties ever rented by the petitioner. In May 1945, the taxpayer purchased eight lots in another area in Canton to build single family dwelling units thereon for sale purposes. He sold these units during the period from October 1945 to February 1946, as soon as each was completed. He also built 64 houses during the years 1946, 1947, 1948 and 1949, which were *292 sold in those years. The costs of petitioner's different projects were recorded separately on his books. The seven two-family units were designated on the taxpayer's records as "Job 406". A separate bank account was opened which received all rental deposits from these units and from which the petitioner paid maintenance expenses, interest and principal payments on the loans. The rental income was kept separate at all times from income on other projects. On October 12, 1945, the National Housing Agency regulations, limiting the petitioner's right to sell the two-family dwelling units and fixing a maximum price at which the units could be sold, were revoked. This revocation did not affect the rents which could be charged. The fact that sales controls were revoked and rent controls were maintained was a factor in the taxpayer's determination to sell these properties. On December 20, 1945, the petitioner sold one of the two-family units to his son who had returned from military service, as an investment. This sale was treated as a 1946 transaction for income tax purposes. In 1946, six of the two family units, including the duplex sold to his son, were disposed of by the petitioner. Several *293 units were sold by listing the properties through multiple listing facilities of the Canton Real Estate Board. No "For Sale" signs were erected on the property. No options had been granted to tenants to purchase the properties and none of the units were sold to tenants. The duplex units were occupied by tenants when the properties were sold. The properties, their dates of completion and sale, and gross profits on sale, are as follows: Date of
Location of Property
Completion
Date of Sale
Gross Profit
121-123 - 16th Street, N.E.
Canton, Ohio
March 1945
Dec. 20, 1945
$ 407.67
127-129 - 16th Street, N.E.
Canton, Ohio
March 1945
June 3, 1946
1,920.21
131-133 - 16th Street, N.E.
Canton, Ohio
January 1945
Mar. 15, 1946
2,870.25
301-303 - 16th Street, N.E.
Canton, Ohio
January 1945
June 20, 1946
1,870.41
1613-1615 Cherry Ave., N.E.
Canton, Ohio
February 1945
June 7, 1946
3,228.06
1619-1621 Cherry Ave., N.E.
Canton, Ohio
March 1945
June 4, 1946
2,520.16
$12,816.78
The petitioner reported on his 1946 income tax return the gain from the sale of these six units as a net long term capital gain of $12,816.78 for the year 1946. *294 The gain derived from the disposition of the six duplex dwelling units resulted from the sale of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. [1]
Opinion VAN FOSSAN, Judge: At the outset it is noted that petitioner's principal business activity was to build houses *295 for sale, which business he pursued actively in the taxable year. The six double houses were the only houses which he ever rented. When petitioner built these houses governmental restrictions on rental and sales prices were such that he knew that he could not make a profit either by renting or selling. To sell immediately would have resulted in a loss forthwith. To rent them, held a double advantage. It postponed possible capital loss and it provided a carrying charge until the restrictions on sale might be lifted. In October 1945 the restrictions on sale of the houses were lifted and petitioner was free to sell. In December he sold one house to his son for investment purposes, making a gross profit of $400some. In March and June he sold the five remaining houses, making an aggregate gross profit on the five of $12,409.11. On this set of facts, and other evidence in the record, whatever may have been petitioner's original intent when he built the houses, we cannot escape the conclusion that throughout the taxable year 1946 he held the houses in question primarily for sale to customers in the ordinary course of his trade or business. Accordingly, the profit on such sale is taxable *296 as ordinary income. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purpose of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *. * * *↩